**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **RAY A. ARDITI,** | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **POLICE OFFICER RICHARD SUBERS,** | : | **No. 15-5511** |
| **et al.,** | : | |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                                    DECEMBER 16, 2016

Ray Arditi filed suit against police officers from three municipalities, alleging that his constitutional rights were violated when he was handcuffed and searched in a McDonald's parking lot and later received a citation for disorderly conduct. The Defendants filed three motions for summary judgment, and the Court granted in part and denied in part each of the motions. Now each remaining party has filed a motion for reconsideration, seeking a different result on at least one aspect of the Court's summary judgment ruling. Because none of them meet the standard for a motion for reconsideration, the Court will deny all of the motions.

### BACKGROUND

While Ray Arditi was eating at a McDonald's restaurant on May 31, 2015, he became involved in some way in a verbal altercation with Catherine Herbert. Someone at the McDonald's restaurant did call 911 and reported that a fight had broken out. Officers from three municipalities were dispatched to the scene. While they were on their way to the McDonald's, a dispatch operator clarified for the officers that the fight was a verbal altercation, rather than a physical one.

1

When Mr. Arditi finished eating, he left the restaurant to walk to his car. As he stood in the parking lot, he saw multiple police cars pull in to the lot. He states that several officers then got out of their cars and immediately approached him, demanding that he identify himself and screaming orders and threats.[1] Mr. Arditi admits that he answered the officers' demands with questions of his own rather than by identifying himself. However, according to Mr. Arditi's account, he did not physically resist the officers at any time. Officer Clymer of the Brookhaven Police Department then handcuffed Mr. Arditi, and Officer Naegele of Upland assisted by holding one of Mr. Arditi's arms.[2] Meanwhile, Officer Young of Parkside pointed a taser at Mr. Arditi and screamed that he was resisting and was a terrorist. After Mr. Arditi was handcuffed, he informed the officers that his identification was in the trunk of his car. Mr. Arditi told the officers that his car keys were in his pocket, and Officer Clymer retrieved Mr. Arditi's car keys from his pocket and searched his car to get the identification. Mr. Arditi was then released without being charged.

At no time during this encounter did Mr. Arditi tell any of the officers that the handcuffs were uncomfortable, although Mr. Arditi testified at his deposition that the handcuffs felt like knives digging into his wrists. Mr. Arditi submitted pictures of his wrists, taken shortly after the incident, showing marks. He went to the emergency room for treatment of his wrists the afternoon of the incident and saw his doctor a few days later, by which time there were no visible injuries. At that doctor visit, no treatment was given. He claimed that his wrist injuries are

---

[1] The officers' testimony differs from Mr. Arditi's significantly with respect to most of the encounter.

[2] Mr. Arditi testified in his deposition that Officer Subers handcuffed him, but this assertion was based only on the fact that Officer Subers was the officer who eventually issued a citation, not on any positive identification. He also claims that no officers went into the McDonald's to investigate, but the officers testify that Officer Subers did so. Because Mr. Arditi's testimony, uncorroborated by anyone inside the McDonald's, at most reveals that he did not personally observe any officer enter the McDonald's, it does not directly contradict the officers' testimony that Officer Subers entered the McDonald's and conducted an investigation.

ongoing, but it was unclear from the limited medical records submitted as part of the summary judgment record whether his ongoing wrist and thumb complaints actually stem from this incident.[3]

The next day, Mr. Arditi went to the police department to complain about his treatment. There, he spoke with Chief McGoldrick, who denied him access to a police report and threatened to issue a criminal summons because of his complaints.  Unbeknownst to Mr. Arditi, Officer Subers had already written in his notes at the end of Officer Subers's shift on May 31, 2015 that he was planning to issue a disorderly conduct citation to both Mr. Arditi and Ms. Herbert.  He then issued both Mr. Arditi and Ms. Herbert citations on his next shift, which did not overlap with Chief McGoldrick's shift.  Both Officer Subers and Chief McGoldrick testified that Officer Subers did not need the Chief's approval to issue a citation for disorderly conduct.  There is no evidence in the record that Officer Subers and Chief McGoldrick communicated with each other about bringing any charges.  The charges against Mr. Arditi were later dismissed, however, when the police officers failed to appear at a hearing on the charges.

Mr. Arditi then filed this suit.  After initial motion practice and amendments to the original complaint, the following claims remained.  In Count One of Mr. Arditi's Third Amended Complaint, Mr. Arditi claimed under 42 U.S.C. § 1983 that all defendants except Chief McGoldrick[4] violated his Fourth and Fourteenth Amendment rights by illegally searching

---

[3] There are treatment records from May and June of 2016, and the handcuffing is described in those records.  The records also mention chiropractic care relating to wrist and thumb pain.  None of the records expressly link the injuries directly to the handcuffing.  On the one hand, the records do recount Mr. Arditi's mention of that incident.  On the other, the records note increasing pain in the few months before the appointments, which is well after the incident.  At the time the summary judgment motions were filed, no medical or other expert opinion testimony had been submitted linking his current wrist issues with the handcuffing.

[4] Mr. Arditi initially included Chief McGoldrick in Counts I and II, but the Court dismissed those claims as to Chief McGoldrick.

his car and seizing him.  In Count Two, he claimed under § 1983 that all defendants except Chief McGoldrick violated his Fourth and Fourteenth Amendment rights by using excessive force against him.  In Count Three, he claimed that Defendants Subers and McGoldrick maliciously prosecuted him in violation of Pennsylvania state law.  In Count Four, Mr. Arditi claimed Defendants Subers and McGoldrick violated § 1983 when they conspired to maliciously prosecute him.

The Defendants filed motions for summary judgment.  As a result, the Court dismissed all claims against Officer Subers and Chief McGoldrick, the excessive force claim, and the illegal search claim as to Officers Naegele and Young.  The illegal seizure claim, therefore, remains as to Officers Naegele, Young, and Clymer, and the illegal search claim remains as to Officer Clymer.  The Plaintiff and all remaining Defendants have now filed motions for reconsideration of various aspects of the Court's summary judgment ruling.

## LEGAL STANDARD

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied,* 476 U.S. 1171 (1986) (internal citations omitted).  A court should grant a motion for reconsideration only "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice."  *Drake v. Steamfitters Local Union No. 420*, No. 97–585, 1998 WL 564486, at *3 (E.D. Pa. Sept. 3, 1998) (citing *Smith v. City of Chester,* 155 F.R.D. 95, 96–97 (E.D. Pa. 1994)).  *See also Max's Seafood Café, by Lou–Ann, Inc., v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999).  "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly."

4

*Continental Casualty Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).  A

motion for reconsideration should not raise additional arguments that the movant "could have

made but neglected to make prior to judgment."  *Holsworth v. Berg,* No. 05–1116, 2005 WL

1799409, at *3 (E.D. Pa. Jul. 26, 2005) (quoting *U.S. v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D.

Pa. 2003)).

DISCUSSION

### A.  Mr. Arditi's Motion for Reconsideration

Mr. Arditi seeks the reinstatement of his excessive force claim.  Much of his brief motion

rehashes many of the same arguments he raised in his oppositions to Defendants' summary

judgment motions.  To the extent that he merely raises the same arguments that the Court

previously considered, he has not satisfied the standard for a motion for reconsideration, and the

Court need not revisit its previous analysis to explain why those same arguments are insufficient.

Mr. Arditi's "new" argument, however, seems to be that he now has an expert report on

causation purporting to link his current wrist complaints to the handcuffing, thus demonstrating

that his injuries were more severe than the summary judgment record made it seem.  He notes, as

he did at oral argument on the summary judgment motions, that he received this report on the

day of the summary judgment argument.  However, this is the first time that Mr. Arditi has

submitted the report for the Court's review; it was not a part of the summary judgment record,

nor did he attempt to supplement the record to include it, despite the passage of three weeks

between his receipt of the report and the Court's Order granting summary judgment on the

excessive force claim.  Thus, the evidence cannot be considered newly available – even in the

unlikely event that Mr. Arditi could not obtain this "new" causation evidence prior to early

October, 2016, he did have it in his possession well before the Court ruled on the summary

judgment motions and made no attempt to present it to the Court at that time.  Absent any newly available evidence, intervening changes in law, or clear errors of law, then, the Court will deny Mr. Arditi's motion.

### B.  Officer Clymer's Motion for Reconsideration

Officer Clymer argues that the Court erred in not crediting the officers' testimony that they spoke to the McDonald's manager, who identified Mr. Arditi as one of the people involved in an altercation, before confronting Mr. Arditi.  He claims that Mr. Arditi's testimony is not enough to create a genuine issue of material fact on this point, and because it was this dispute, in large part, that underpinned the Court's ruling that the officers lacked probable cause or even reasonable suspicion to handcuff Mr. Arditi, the Court should reconsider its ruling and grant summary judgment on Mr. Arditi's illegal search and seizure count.

Even though the factual dispute may not be strong, however, Officer Clymer has not convinced the Court that a dispute does not exist.  According to Officer Clymer, because the Court found that Mr. Arditi's testimony that he did not see any officer go into the McDonald's to investigate did not actually contradict the officers' testimony that Officer Subers *did* go into the McDonald's to investigate, given that Mr. Arditi was outside the McDonald's and engaged by at least three officers, the Court should likewise find that Mr. Arditi's testimony that he did not see the McDonald's manager outside the restaurant at any time does not actually contradict the officers' testimony that the manager was outside and that they spoke to her before confronting Mr. Arditi.  Officer Clymer speculates that the manager could have been standing behind Mr. Arditi and could have gestured to the officers that Mr. Arditi was involved in the altercation.

However, the latter sets of facts *do* contradict each other.  Mr. Arditi testified that he stepped outside the McDonald's, the police cars pulled up as he was walking to his car, and the

officers stopped Mr. Arditi before he got to his car.  He also testified that the manager was not outside – indeed, he said at his deposition that no one else was in the parking lot aside from him and the officers.  Officer Clymer testified that he spoke to the McDonald's manager outside of the restaurant and then confronted Mr. Arditi.  Those two accounts directly conflict with each other, as Mr. Arditi was outside and in a position to observe the officers' actions, as well as the presence or absence of others in the parking lot, and it will be up to the jury to determine whether to believe Mr. Arditi's account or the officers'.  Because not even Officer Clymer argues that the officers had reasonable suspicion and/or probable cause without some information to tie Mr. Arditi to the altercation in the McDonald's or some other crime, and because the remainder of Officer Clymer's arguments depend on the Court reconsidering this factual issue, the Court will not grant the motion for reconsideration.

### C.  Officers Naegele and Young's Motions for Reconsideration

Both Officer Naegele and Officer Young move for reconsideration, and because the two officers make substantially the same arguments, the Court will address their motions together.  In their summary judgment briefing, neither officer addressed whether the handcuffing of Mr. Arditi constituted an illegal seizure.  The officers argue that this particular claim was never pleaded or pursued by Mr. Arditi, and that their failure to address the claim was because they could not have foreseen that it would become an issue in the case.  However, Officer Naegele himself quotes a paragraph of the Third Amended Complaint that contains that supposedly secret claim: "*Plaintiff was illegally seized by Defendant Police Officers, acting in concert, when he was improperly handcuffed* causing injury to Plaintiff's wrists, when Defendant Police Officers pointed weapons at Plaintiff and threatened Plaintiff with serious bodily injury, and when Defendant Police Officers searched Plaintiff's person, confiscated keys from Plaintiff, and

searched Plaintiff's car." 3d Am. Compl. ¶ 22 (emphasis added).  Indeed, the Brookhaven officers directly addressed that claim in their summary judgment briefing, which demonstrates that at least some of the Defendants were well aware of the issue prior to the Court's ruling on summary judgment.  That Mr. Arditi did not mention this theory of the case in his response to Officers Naegele and Young's motions is of no moment – it is not surprising that his responsive briefs failed to mention arguments that were not even raised by the movants.  Moreover, as the officers acknowledge, the issue, even apart from appearing in their co-defendants' briefing, was discussed at oral argument on the motions, and Officers Naegele and Young still did not attempt to follow up in any way to address the claim.

In essence, what Officers Young and Naegele ask the Court to do is to give them a chance to present arguments that they could have and should have presented to the Court before the matter was decided.  As they both acknowledge in their briefs, "motions for reconsideration may not be used to reargue unsuccessful theories, or present new facts, issues, or *arguments that could have (and should have) been presented to the court in the context of the matter previously decided.*"  *See* Naegele Mot. at 4 (Docket No. 82); Young Mot. at 4 (Docket No. 84) (emphasis added).[5]  Because the officers could have and should have presented their arguments in their previous motions, the Court will deny their motions for reconsideration.

---

[5] Even if the Court were to consider the officers' newly presented arguments, they still would be unavailing.  As was discussed in detail in the Court's summary judgment opinion as well as in discussing Officer Clymer's motion for reconsideration, *supra*, there is a dispute of fact as to whether the officers had any reason to think that Mr. Arditi was involved in criminal activity when they arrived at the McDonald's.  To the extent that Officers Young and Naegele also argue that they were entitled to rely on Officer Clymer, Mr. Arditi's testimony that the officers all arrived at once and immediately approached him, in contrast to the officers' testimony that the officers from different departments arrived separately and that Brookhaven officers were on the scene first, creates an issue of fact as to whether it would have been reasonable for the officers to rely on Officer Clymer.

**CONCLUSION**

For the foregoing reasons, the Court will deny the Motions for Reconsideration.  An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge