IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAY A. ARDITI, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| POLICE OFFICER RICHARD SUBERS, et al., | : | No. 15-5511 |
| *Defendants*. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                          JANUARY 9, 2017

Ray Arditi filed suit against police officers from three municipalities, alleging that his constitutional rights were violated when he was handcuffed and searched in a McDonald's parking lot and later received a citation for disorderly conduct.  The Defendants filed three motions for summary judgment, and the Court granted in part and denied in part each of the motions, dismissing several claims, including a claim for excessive force, and leaving only a claim for illegal seizure against Officers Clymer, Naegele, and Young, and an illegal search claim against Officer Clymer.  The Defendants have filed two motions *in limine*, seeking to exclude any evidence relating to alleged physical injuries resulting from the McDonald's incident and any evidence relating to the issuance of a citation for disorderly conduct and the ultimate disposition of that citation.  Mr. Arditi opposes both motions.  The Court will deny Defendants' motion to exclude evidence of physical injuries and grant Defendants' motion to exclude evidence relating to the citation and its ultimate disposition.

**BACKGROUND**

While Ray Arditi was eating at a McDonald's restaurant on May 31, 2015, he became involved in some way in a verbal altercation with Catherine Herbert. Someone at the McDonald's restaurant did call 911 and reported that a fight had broken out. Officers from three municipalities were dispatched to the scene. While they were on their way to the McDonald's, a dispatch operator clarified for the officers that the fight was a verbal altercation, rather than a physical one.

When Mr. Arditi finished eating, he left the restaurant to walk to his car. As he stood in the parking lot, he saw multiple police cars pull in to the lot. He states that several officers then got out of their cars and immediately approached him, demanding that he identify himself and screaming orders and threats.[1] Mr. Arditi admits that he answered the officers' demands with questions of his own rather than by identifying himself. However, according to Mr. Arditi's account, he did not physically resist the officers at any time. Officer Clymer of the Brookhaven Police Department then handcuffed Mr. Arditi, and Officer Naegele of Upland assisted by holding one of Mr. Arditi's arms.[2] Meanwhile, Officer Young of Parkside pointed a taser at Mr. Arditi and, according to Mr. Arditi, screamed that he was resisting and was a terrorist. After Mr. Arditi was handcuffed, he informed the officers that his identification was in the trunk of his car. Mr. Arditi told the officers that his car keys were in his pocket, and Officer Clymer retrieved Mr.

---

[1] The officers' testimony differs from Mr. Arditi's significantly with respect to most of the encounter.

[2] Mr. Arditi testified in his deposition that Officer Subers handcuffed him, but this assertion was based only on the fact that Officer Subers was the officer who eventually issued a citation, not on any positive identification. He also claims that no officers went into the McDonald's to investigate, but the officers testify that Officer Subers did so. Because Mr. Arditi's testimony, uncorroborated by anyone inside the McDonald's, at most reveals that he did not personally observe any officer enter the McDonald's, it does not directly contradict the officers' testimony that Officer Subers entered the McDonald's and conducted an investigation.

Arditi's car keys from his pocket and searched his car to get the identification. Mr. Arditi was then released without being charged.

At no time during this encounter did Mr. Arditi tell any of the officers that the handcuffs were uncomfortable, although Mr. Arditi testified at his deposition that the handcuffs felt like knives digging into his wrists. Mr. Arditi submitted pictures of his wrists, taken shortly after the incident, showing marks. He went to the emergency room for treatment of his wrists the afternoon of the incident and saw his doctor a few days later, by which time there were no visible injuries. At that doctor visit, no treatment was given. He claimed that his wrist injuries are ongoing, but it was unclear from the limited medical records submitted as part of the summary judgment record whether his ongoing wrist and thumb complaints actually stem from this incident.[3]

The next day, Mr. Arditi went to the police department to complain about his treatment. There, he spoke with Chief McGoldrick, who denied him access to a police report and threatened to issue a criminal summons because of his complaints. Unbeknownst to Mr. Arditi, Officer Subers had already written in his notes at the end of Officer Subers's shift on May 31, 2015 that he was planning to issue a disorderly conduct citation to both Mr. Arditi and Ms. Herbert. He then issued both Mr. Arditi and Ms. Herbert citations on his next shift. The charges against Mr. Arditi were later dismissed, however, when the police officers failed to appear at a hearing on the charges.

---

[3] There are treatment records from May and June of 2016, and the handcuffing is described in those records. The records also mention chiropractic care relating to wrist and thumb pain. None of the records expressly link the injuries directly to the handcuffing. On the one hand, the records do recount Mr. Arditi's mention of that incident. On the other, the records note increasing pain in the few months before the appointments, which is well after the incident. At the time the summary judgment motions were filed, no medical or other expert opinion testimony had been submitted linking his current wrist issues with the handcuffing. Mr. Arditi has since produced to Defendants the report of Dr. Osterman, which purports to link his ongoing wrist complaints to the handcuffing.

Mr. Arditi then filed this suit. After initial motion practice and amendments to the original complaint, the following claims remained. In Count One of Mr. Arditi's Third Amended Complaint, Mr. Arditi claimed under 42 U.S.C. § 1983 that all defendants except Chief McGoldrick[4] violated his Fourth and Fourteenth Amendment rights by illegally searching his car and seizing him. In Count Two, he claimed under § 1983 that all defendants except Chief McGoldrick violated his Fourth and Fourteenth Amendment rights by using excessive force against him. In Count Three, he claimed that Defendants Subers and McGoldrick maliciously prosecuted him in violation of Pennsylvania state law. In Count Four, Mr. Arditi claimed Defendants Subers and McGoldrick violated § 1983 when they conspired to maliciously prosecute him.

The Defendants filed motions for summary judgment. As a result, the Court dismissed all claims against Officer Subers and Chief McGoldrick, the excessive force claim, and the illegal search claim as to Officers Naegele and Young. The illegal seizure claim, therefore, remains as to Officers Naegele, Young, and Clymer, and the illegal search claim remains as to Officer Clymer. The Defendants have now filed *in limine*, seeking to exclude any evidence relating to alleged physical injuries resulting from the McDonald's incident and any evidence relating to the issuance of a citation for disorderly conduct and the ultimate disposition of that citation.

**LEGAL STANDARD**

"Under the Federal Rules of Evidence, subject to certain limitations, all evidence is admissible if it is relevant, i.e., if it tends to make the existence or nonexistence of a disputed material fact more probable than it would be without that evidence." *Forrest v. Beloit Corp.,* 424

---

[4] Mr. Arditi initially included Chief McGoldrick in Counts I and II, but the Court dismissed those claims as to Chief McGoldrick.

F.3d 344, 355 (3d Cir. 2005); *see* Fed. R. Evid. 401, 402.  Pursuant to Federal Rule of Evidence 403, a court may nonetheless exclude relevant evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Forrest,* 424 F.3d at 355 (quoting Fed R. Evid. 403).  To exclude evidence under Rule 403, "the probative value of the evidence must be 'substantially outweighed' by the problems in admitting it." *Id.* (quoting *Coleman v. Home Depot, Inc.,* 306 F.3d 1333, 1343–44 (3d Cir. 2002)).  However, "prejudice does not simply mean damage to the opponent's cause." *Goodman v. Pa. Turnpike Comm'n,* 293 F.3d 655, 670 (3d Cir. 2002) (internal quotation marks omitted).  Only "*unfair* prejudice," or "prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found," can tip the scales in favor of inadmissibility.  *Ansell v. Green Acres Contr. Co.,* 347 F.3d 515, 525 (3d Cir. 2003) (emphasis added).

**DISCUSSION**

> **A. Defendants' Motion in limine to preclude any testimony, evidence, or argument that Mr. Arditi suffered any physical injuries at the time of his detention on May 31, 2015**

Defendants argue that because the excessive force claim was dismissed, any evidence of physical injury suffered by Mr. Arditi as a result of the handcuffing is irrelevant, given that the legality of the search and seizure has nothing to do with whether or not Mr. Arditi was in physical pain.  They further argue that any such evidence would confuse the jury, and that the confusion would be heightened by Defendants' need to rebut the evidence of physical injury with

their own physician witnesses.  Mr. Arditi responds that if the handcuffing was illegal, then all injuries, physical or otherwise, that resulted from it are relevant and compensable.

Although they did not cite case law in their motion to further their specific argument, Defendants expanded on their argument at a Chambers conference, claiming that *Snell v. City of York*, 564 F.3d 659 (3d Cir. 2009), stands for the proposition that illegal seizure claims stemming from a lack of reasonable suspicion and/or probable cause are distinct from excessive force claims and that therefore, once a court determines that an excessive force claim is not viable, any evidence regarding that use of force must be excluded.  Defendants stretch *Snell* to the breaking point with their argument.  While it is certainly true, as the Court discussed in evaluating the parties' summary judgment motions, that illegal seizure claims based on a lack of reasonable suspicion and/or probable cause and excessive force claims are analytically distinct and that excessive force claims do not automatically flow from a finding of an illegal seizure, it is not true that any physical damages proximately caused by the illegal seizure must be jettisoned just because the force used was not excessive.

For instance, in *Bodine v. Warwick*, 72 F.3d 393 (3d Cir. 1995), a case cited approvingly in *Snell*, the Third Circuit Court of Appeals explained that "basic principles of tort law" govern what damages are recoverable in an illegal search or seizure claim.  *Id.* at 400.  That is, defendants are "liable for the harm 'proximately' or 'legally' caused by their tortious conduct (i.e., by their illegal [search or seizure])."  *Id.*  The *Bodine* court then drew a distinction between excessive force claims, on the one hand, and illegal search and seizure claims, on the other, noting that the former do not necessarily flow from the latter, and emphasized the need to keep the two types of claims analytically distinct from one another.  However, in so doing, the court did nothing to limit or change the basic tort principles that it previously discussed as applying to

illegal search and seizure claims. *Id. See also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 n.13 (9th Cir. 2015) (noting that even though all circuit courts that have addressed the interplay between unlawful arrest claims and excessive force claims have found that excessive force claims may not be "predicated *only* on the fact of unlawful arrest," "the damages recoverable on an unlawful arrest claim include damages suffered because of the use of force in effecting the arrest") (internal citations and quotations omitted) (citing *Snell*, 564 F.3d at 672; *Bodine*, 72 F.3d at 400-01).

While Defendants are free to rebut Mr. Arditi's claims of physical injuries and even to argue, for instance, that his own conduct was a superseding cause of his injuries, the Court will not bar Mr. Arditi from offering any evidence regarding physical injuries.

### B. Defendants' Motion in limine to preclude testimony, evidence, or argument that Plaintiff was found not guilty on the charge of disorderly conduct

Defendants argue that because a finding of not guilty on the disorderly conduct charge or the fact that no officers appeared at the hearing on the matter are not relevant to whether the officers had reasonable suspicion or probable cause, the not guilty disposition and circumstances surrounding that outcome should not be permitted as evidence in the case. Mr. Arditi responds that the disposition of the charges is relevant to his damages and to the credibility of Officer Subers, who will be a witness in the case. He claims that his damages include the stress of having to defend himself against these charges. In addition, he claims that the outcome of the charges is important in not creating bias against him.

The Court agrees with Defendants that whether any charges were ultimately brought against Mr. Arditi, and the ultimate resolution of those charges, has no relevance to the issues remaining in this case, even if they did figure prominently in claims that were dismissed at

earlier stages of the case.  Mr. Arditi has not sufficiently explained how those facts would tend to make it more or less likely that the officers at the McDonald's had reasonable suspicion and/or probable cause to stop and handcuff him.  He has also not shown how the stress of an entirely separate event – the bringing of charges against him for disorderly conduct – was *caused* by the conduct of the officers in the McDonald's parking lot, such that he would be able to recover damages for that stress.  Finally, Mr. Arditi has not shown how anything relating to the charges or their disposition would make Officer Subers's testimony about what happened at the McDonald's more or less credible, any more than any other irrelevant set of facts.

Therefore, the Court will exclude evidence and argument relating to both the fact that charges were brought against Mr. Arditi for disorderly conduct and the facts relating to how those charges were ultimately resolved.

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' Motion *in limine* to preclude any testimony, evidence, or argument that Mr. Arditi suffered any physical injuries at the time of his detention on May 31, 2015 and grant Defendants' Motion *in limine* to preclude testimony, evidence, or argument that Plaintiff was found not guilty on the charge of disorderly conduct. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge